UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MCSQUARED PR, INC., a New York
corporation
                                    Plaintiff,

vs.
                                                                    Case No.: _____

SHARON STONE, an individual
and AMERICAN PROGRAM BUREAU, INC.,
a Massachusetts corporation

                                    Defendants.
-------------------------------------------------------------x

## COMPLAINT

Plaintiff, MCSQUARED PR, INC. ("MCS" or "Plaintiff"), by and through its

undersigned counsel, hereby sues defendants SHARON STONE ("Stone"), and

AMERICAN PROGRAM BUREAU, INC. ("APB") (collectively, "Defendants"), and in

support thereof states as follows:

## PRELIMINARY STATEMENT

This case is simple and straightforward.  MCS is boutique public relations firm

based in Brooklyn, New York.  MCS performed public relations work for the Repubic of

Ecuador ("ROE") from May 1, 2013 through April 30, 2014.  During its contractual

relationship with the ROE, MCS, on multiple occassions, retained the services of APB, a

talent agency, to hire celebrities on its public speaker roster to participate on the public

relations campaign implemented by MCS for the ROE. MCS entered into an oral

agreement with APB and Stone (through her agent APB) for Stone to make a three (3)

day appearance in Ecuador from April 7-9, 2014.  MCS wired to APB $275,000.00 to cover Stone's appearance fee.  APB and Stone breached their contractual duties to MCS. On April 6, 2014, **two hours before** Stone was expected to arrive in Quito, Ecuador, APB notified MCS that Stone was not going to be able to peform her contractual obligations due health related issues.   Later that day, Stone was hospitalized in São Paulo, Brazil as reported on multiple media outlets.[1]

As of the date of this filing, neither APB nor Stone has refunded MCS for the $275,000.00 appearance fee paid by MCS.  Moreover, as a direct and proximate cause of Stone's and APB's breach, MCS incurred consequential damages of at least $77,420.09. MCS incurred these consequential damages to accommodate Stone's diva-like requests including first class airfare tickets and luxury hotel suites for herself and her three (3) companions, hair and make-up for events to be held in the Amazon region of Ecuador, personal guides, etc..  In addition, MCS had to paid for costs and professional fees incurred in the logistical planning of Stone's scheduled appearancse including, but not limited to media production services and security.

---

[1] *See, e.g.,* http://www.latintimes.com/sharon-stone-hospitalized-basic-instinct-actress-brazilian-hospital-after-possible-stroke-164771;
http://www.gmanetwork.com/news/story/356085/showbiz/showbizabroad/sharon-stone-kept-overnight-in-brazil-hospital;   and   http://latino.foxnews.com/latino/news/2014/04/10/actress-sharon-stone-released-from-brazilian-hospital-after-treatment-for-undisclosed-illness/

## PARTIES AND JURISDICTION

1.      Plaintiff MCSQUARED PR, INC. is a New York corporation with its principal place of business in Brooklyn, New York.

2.      Upon information and belief, Defendant SHARON STONE is an individual of adult age and a resident of the County of Los Angeles, California.  Ms. Stone is a world-renowned actress who has appeared in such films as *Total Recall*, *Basic Instinct*, *The Quick and The Dead*, *Casino* and *Gods Behaving Badly*.  Upon information and belief, Stone played the role of *Aphrodite* in *Gods Behaving Badly*, a movie that was released in 2013 and was partially filmed at JC Studios in Brooklyn, New York.

3.      Upon information and belief, Stone began her career in 1977 as a fashion model in New York City with Ford Models.  Upon information and belief, is subject to general jurisdiction of this Court because since the inception of her career as a fashion model to present, Stone has maintained and maintains continuous and systematic contacts with the State of New York and the federal judicial district for the Eastern District of New York.

4.      Upon information and belief, Stone is also subject to the specific jurisdiction of this Court because Stone, through her agent APB, entered into a contract with MCS a Brooklyn-based public relations firm and this action arises from her breach of her contractual duties to MCS, and because she committed tortious acts against MCS who suffered a financial injury in Brooklyn, New York.

3

5.     Upon information and belief, Defendant AMERICAN PROGRAM BUREAU, INC. is a Massachusetts corporation with its principal place of business in Newton, Massachusetts.  APB is a global speaker, celebrity and entertainment agency. APB has a representative office in New York according to the information posted on its website at www.apbspeakers.com.

6.     Upon information and belief, APB has a physical presence in the State of New York by means of a representative office located in the State of New York or has an agency relationship with entities and/or individuals located in the State of New York. Upon information and belief, since its inception to present, APB has maintained and maintains continuous and systematic contacts with the State of New York and the federal judicial district for Eastern District of New York.  Upon information and belief, APB received $330,000.00 from MCS during the period of 2013-2014 for the rendition of services as a talent agency including the funds that it has wrongfully retained concerning Stone's breach.

7.     Upon information and belief, APB has numerous speakers and celebrities on its roster that are residents of the Eastern District of New York, it regularly transacts business with individuals and entities located in the Eastern District of New York, and has promoted and provided speakers for events hosted in the Eastern District of New York.

4

8. Upon information and belief, APB is also subject to the specific jurisdiction of this Court because APB entered into a contract with MCS a Brooklyn-based public relations firm and this action arises from APB's breach of its contractual duties to MCS and because it committed tortious acts against MCS who suffered a financial injury in Brooklyn, New York.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because MCS seeks damages from Defendants in an amount greater than $75,000, exclusive of interest and costs, and because the action is between a citizen of a State (MCS, a citizen of New York) and citizens or subjects of a foreign state (Stone is a California citizen and APB is a Massachusetts citizen).

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the acts or omissions giving rise to MCS' claims occurred in this District and Defendants are subject to the personal jurisdiction of this Court because they have sufficient connections with the Eastern District of New York to make venue proper in this District.

11. As set forth above, this Court has personal jurisdiction over Defendants because Defendants regularly transact and conduct business within this District, and Defendants otherwise have made or established contacts within this District specifically related to the subject matter of this processing sufficient to permit the exercise of personal jurisdiction.

## GENERAL ALLEGATIONS

12.     MCS is boutique public relations firm based in Brooklyn, New York.  MCS performed public relations work for the Repubic of Ecuador ("ROE") from May 1, 2013 through April 30, 2014.  MCS designed and implemented a global public relations strategy to bring awareness to the environmental damage caused by Chevron Corp.'s ("Chevron") predecessor, Texaco, in the Northeast Amazon region of Ecuador and Chevron's failure to adequately remediate such damage.  In addition, MCS rendered services to the ROE to counter Chevron's public relations strategy to harm the reputation of Ecuador.

13.     As part of its public relations strategy, MCS invited celebrities and international personalities to Ecuador in order to raise international awareness about the environmental damages by performing event planning (logistics, security, ground and air transportation, catering, etc.) coordinating press conferences and multimedia production. MCS retained the services of APB to invite the following celebrities and international personalities to Ecuador: Antonia Juhasz, Alexandra Cousteau, and its co-defendant, Sharon Stone.  *See* **Exhibit A**, Affidavit of Maria Garay ("Garay Aff.") at ¶ 3.

14.     In or about February 2014, MCS negotiated and entered into a contract with both APB and Stone providing for Stone to appear in Ecuador for a series of appearances from April 7-9 including meetings with the high-level government of officials of the ROE including its President and Vice President (April 7), fly to the

Orellana Province of Ecuador to visit contaminated areas and to meet with representatives of the affected indigenous communities (April 8) and to attend a press conference with public media regarding her findings of her Ecuadorian Amazon Tour (April 9). *Id.* at ¶¶ 4-6. The designated titled agreed by MCS, APB and Stone was "*The Devastation Big Oil Left Behind in the Ecuadorian Amazon.*" *Id.*

15. APB, MCS and Stone negotiated a formal written contract, but it was never fully executed as APB and Stone never executed the written contract. Notwithstanding the foregoing, there was a meeting of the minds between MCS, APB and Stone. *Id.* at ¶¶ 4-5. MCS, APB, and Stone entered into oral agreement (the "Contract"). *Id.* The Contract provided that Stone would arrive in Ecuador on April 6, 2014 and she would make her three (3) day appearances from April 7-9, would be given a day off to tour Ecuador on April 10 and she would ultimately depart Ecuador on April 11. APB and Stone's side of the bargain was to perform and make the appearances on the scheduled dates.

16. APB, through its Senior Vice President, Jan Tavitian ("Tavitian") made representations to MCS that as Stone's agent it would be able to secure Stone's availability to make the desired appearances in Ecuador.

17. On the other hand, MCS had to pay directly to Stone's agent, APB, the sum of $275,000.00 for Stone's public speaking fee plus cover all out-of-pocket expenses to accommodate Stone's diva-like requests including first class airfare tickets and

luxury hotel suites for herself and her three (3) companions, hair and make-up at the events, personal guides, etc.

18.     MCS paid the $275,000.00 to APB in two (2) installments by sending two (2) wire transfer of $137,500.00 on March 7 and 25, 2014.  *See* **Exhibit B**, wire transfer confirmations.  Stone was supposed to arrive in Quito, Ecuador on April 6, 2014.  MCS' Chief Executive Officer, Maria Garay ("Garay"), was personally expecting her at the airport.  *Id.* at ¶¶ 7-8.  **Two hours before** her expected arrival, Jan Tavitian, APB's Senior Vice President, telephoned Garay to notify her that Stone was cancelling the trip because she had become ill.  *Id.*  Later that day, Stone was hospitalized in the Syrian-Lebanese Hospital in São Paulo, Brazil as reported on multiple media outlets.[2]  *Id.*

19.     Because APB and Stone breached the contract only two hours before Stone was expected to arrive in Ecuador, MCS incurred consequential damages as a direct and proximate result of APB's and Stone's breach in the amount of at least $77,420.09 for travel expenses, including airfare, car rentals and hotel reservations ($23,250.03), media production ($33,316.53) and logistical services ($20,853.53).  *Id.* at ¶ 8.

20.     As of the date of the filing of this action, and despite MCS' repeated requests, neither APB nor Stone has refunded MCS for the $275,000.00 speaker fee nor

---

[2]  *See, e.g.,*  http://www.latintimes.com/sharon-stone-hospitalized-basic-instinct-actress-brazilian-hospital-after-possible-stroke-164771;
http://www.gmanetwork.com/news/story/356085/showbiz/showbizabroad/sharon-stone-kept-overnight-in-brazil-hospital;  and  http://latino.foxnews.com/latino/news/2014/04/10/actress-sharon-stone-released-from-brazilian-hospital-after-treatment-for-undisclosed-illness/

have they reimbursed MCS for the consequential damages incurred by MCS as a direct and proximate cause of APB's and Stone's breach.  *Id.* at ¶ 9.

21.     All time relevant hereto, APB acted on its own behalf and on behalf of Stone as her agent either with actual and/or apparent authority.

22.     Due to Defendants' conduct, MCS was obligated to engage undersigned counsel and it is obligated to pay reasonable attorney's fees and litigation costs, the reimbursement of which MCS seeks in this action pursuant to the causes of action set forth below.

23.     All conditions precedent to this action have been met, waived, or excused.

## COUNT I – Breach of Contract
(Against All Defendants)

24.     Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

25.     This is an action for breach of contract against Defendants.

26.     The Contract formed a contract (either express, implied-in-fact and/or implied-in-law) between CLE and Defendant.

27.     MCS performed all of its obligations under the Contract.

28.     Defendants breached the Contract as a result of Stone's failure to make her scheduled appearances in Ecuador.

29.     Defendants' breach caused MCS to suffer damages.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $352,420.09, together with pre-judgment interest and post-judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

### COUNT II – Breach of Implied Covenant of Good Faith and Fair Dealing
(Against All Defendants)

30.     Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

31.     There is implied, in the Contract, a covenant of good faith and fair dealing, by which each party agrees that it will not attempt to deprive the other party of the benefits of the agreement.

32.     In undertaking the acts or omissions herein alleged, Defendants acted to deprive MCS from the benefits of the Contract by depriving MCS from the public speaker and celebrity appearance services of Stone thereby breaching the implied covenant of good faith and fair dealing.

33.     As a proximate result of Defendants' actions and/or omissions, MCS has sustained substantial general and special damages, including but not limited to, loss of benefits under the Contract.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $352,420.09, together with pre-judgment interest and post-

judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

## COUNT III – Fraudulent Inducement
(Against All Defendants)

34.     Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

35.     At all times material hereto, and including at all times when the aforementioned representations were made by Defendants, through Tavitian, relating to Contract, Defendants knew that such representations were false and inaccurate. Moreover, knowing that MCS had relied on Tavitian's representations, Defendants did not take any steps to retract Tavitian's representations to MCS.  Instead, Defendants retained the benefit conferred by MCS as a result of the fraudulent inducement of its agent, Tavitian.  Furthermore, subsequent to Tavitian's representations were made, Defendants acted as if those representations were true by continuing to communicate and plan with MCS for Stone's scheduled appearances in Ecuador.

36.     The representations made by Defendants were intentionally, knowingly, willfully and maliciously made with the intention of inducing MCS to enter into the Contract.

37.     In reasonable and justifiable reliance upon the aforesaid representations, MCS wired $275,000.00 to APB to retain the services of Stone.  In addition, in reasonable

11

and justifiable reliance upon the aforesaid representations, MCS incurred additional and consequential damages of at least $77,420.09.

38.     The representations made by Defendants were false and misleading, wanton and in total disregard of the rights of MCS.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $352,420.09, together with pre-judgment interest and post-judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

## COUNT IV – Promissory Estoppel
(Against All Defendants)

39.     Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

40.     Defendants, through Tavitian, made clear and definitive promises to MCS to lure it to wire $275,000.00 to APB pursuant to the terms of the Contract.  Moreover, Defendants acted as if those promises were in fact made and failed to retract Tavitian's promises to MCS.

41.     MCS detrimentally relied on Defendants' promises.

42.     By failing to follow through with their promises by cancelling at the last hour Stone's schedule appearances in Ecuador, Defendants breach the clear and definitive promises made to MCS upon which it reasonably and justifiably relied.

43.     In reliance on Defendants' promises, including their promise to produce Stone for the scheduled appearances, MCS failed to explore other alternative celebrities and international figures for the scheduled appearances in Ecuador and as a result MCS' relationship with the ROE was severely damaged to the extent that its multi-million dollar contract with MCS was not renewed.

44.     As a direct and proximate result of Defendants' breach, MCS has been damaged in an amount to be proven at trial, but not less than $352,420.09.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $352,420.09, together with pre-judgment interest and post-judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

### COUNT V – Conspiracy to Defraud
(Against All Defendants)

45.     Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

46.     APB and Stone engaged in a civil conspiracy to defraud MCS.

47.     The fraudulent conspiracy included an agreement to obtain from MCS the sum of $275,000.00 under false pretenses and by committing wire fraud by inducing MCS to wire these funds to APB to secure Stone's services a public speaker.

48.     Each defendant made at least one overt act in furtherance of the conspiracy.

49.     As a direct and proximate result of the conspiracy, MCS has been damaged.

50.     The wrongful acts of Defendants in this regard were done with malice and with the intent to defraud.

51.     MCS is entitled to punitive and exemplary damages in an amount to be determined at trial.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $352,420.09 plus punitive and exemplary damages together with pre-judgment interest and post-judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

### COUNT VI – Conversion
(Against All Defendants)

52.     Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

53.     Defendants, through Tavitian (who made representations to MCS on behalf of APB on its own capacity and on the capacity as the agent of Stone), have taken, detained and converted for their own use MCS' $275,000.0 in funds that at all

times material hereto were intended by MCS to e used to cover Stone's public speaking fee.

54.    Defendants' conversion of the aforesaid funds was intentional, willful and made with total disregard of the rights of MCS.

55.    Each defendant made at least one overt act in furtherance of the conspiracy.

56.    As a direct and proximate result of the wrongful acts of Defendants, MCS has suffered and sustained damages.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $352,420.09 together with pre-judgment interest and post-judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

## COUNT VII – Unjust Enrichment
(Against All Defendants)

57.    Plaintiff MCS re-alleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

58.    This is an action for equitable relief within the equitable jurisdiction of this Court.

59.    MCS conferred a benefit upon Defendants by receiving and retaining $275,000.00 in funds from MCS.

60.     Defendants have knowledge of receiving the aforementioned benefit from MCS.

61.     Defendants have accepted the benefit and retained the same by utilizing the $275,000.00 for their own benefit.

62.     The circumstances are such that it would be inequitable for Defendants to retain the benefit of such monies without repaying MCS.

63.     As a direct and proximate result of Defendants' own conduct, Defendants have been unjustly enriched.

WHEREFORE, MCS demands judgment against Defendants for damages in the in the amount of at least $275,000.00 together with pre-judgment interest and post-judgment interest, attorney's fees, court costs, and other expenses incurred, and such other and further relief as this Court deems just and proper.

Dated: Miami, Florida
        February 24, 2015

                                        Respectfully submitted,

                                        LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
                                        1001 Brickell Bay Drive, 9th Floor
                                        Miami, Florida 33131
                                        E-mail: rodrigo@rdasilvalaw.com
                                        Telephone:   (305) 615-1434
                                        Facsimile:    (305) 615-1435

                                        By: /s/ Rodrigo S. Da Silva
                                            Rodrigo S. Da Silva, Esq.
                                            *Counsel for Plaintiff, MCSquared PR, Inc.*

16

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

MCSQUARED PR, INC., a New York
corporation

                   Plaintiff,

vs.

                                 Case No.: _____

SHARON STONE, an individual
and AMERICAN PROGRAM BUREAU, INC.,
a Massachusetts corporation

                   Defendants.

--------------------------------------------------------------x

### AFFIDAVIT OF MARIA GARAY

STATE OF NEW YORK    )
                          ) s.s.
COUNTY OF KINGS      )

     MARIA GARAY, being duly sworn, deposes and says:

    1.     I am the founding and sole shareholder of MCSquared PR, Inc. ("MCS"). MCS is a boutique public relations firm with a single office located at 649 Morgan Avenue, Suite 1S, Brooklyn, New York 11222.

    2.     I have held the position of Executive Director since MCS was established on October 31, 2011 through present, and in such capacity, I am fully familiar with the facts and circumstances set forth herein.  I affirm under penalty of perjury under the laws of the United States and the State of New York that the content of this Affidavit is true and correct to the best of my knowledge, information, and belief.  I make this

Affidavit in support of MCS's above-captioned lawsuit against Sharon Stone ("Stone")

and American Program Bureau, Inc. ("APB").

3. MCS had a public relations contract with the Republic of Ecuador ("ROE")

from May 1, 2013 through April 30, 2014. During its contractual relationship with the

ROE, MCS retained the services of APB, a talent agency, to hire celebrities on its public

speaker roster to participate on the public relations campaign implemented by MCS for

the ROE. Through APB, MCS retained the services of Antonia Juhasz and Alexandra

Cousteau.

4. In February 2014, MCS and APB entered into an oral contract whereby

MCS would pay to APB the sum of $275,000.00 plus expenses in exchange for obtaining

Stone's appearance at a three (3) day event to be held from April 7-9 in Ecuador. APB

and MCS entertained the entry a formal written agreement, but APB and/or Stone never

executed such written agreement. MCS never received a fully executed copy of the

written agreement governing the subject matter of Stone's participation in MCS' public

relations strategy and Stone's scheduled appearances in Ecuador.

5. Notwithstanding the lack of a written agreement, the parties had an oral

agreement providing for the essential terms of the subject matter of the contract

including the dates of the events, the compensation to be paid, and logistical matters

regarding Stone's trip to Ecuador including security, guided tours, hotel reservations,

etc. APB made representations to MCS that it had the ability to produce Stone for the

2

scheduled appearances and engaged in constant communication with MCS prior to the event to coordinate the logistics of the same. MCS relied on the representations of APB to wire the $275,000.00 public speaking fee to APB and to incur the costs associated with Stone's trip to Ecuador for the scheduled appearances.

6. Under the terms of the oral agreement, Stone was to appear in Ecuador for a series of appearances from April 7-9 including meetings with high-level government officials of the ROE including its President and Vice President (April 7), fly to the Orellana Province of Ecuador to visit contaminated areas and to meet with representatives of the affected indigenous communities (April 8) and to attend a press conference with public media regarding her findings of her Ecuadorian Amazon Tour (April 9). The designated titled agreed by MCS, APB and Stone was *The Devastation Big Oil Left Behind in the Ecuadorian Amazon.*" The event had the same theme and scope as the events coordinated by MCS through APB with Antonia Juhasz and Alexandra Cousteau.

7. Stone was supposed to arrive in Quito, Ecuador on April 6, 2014. I was personally expecting her at the airport. Two hours before her expected arrival, Jan Tavitian, APB's Senior Vice President, telephoned me to notify me that Stone was cancelling the trip because she had become ill. Later that day, Stone was hospitalized in the Syrian-Lebanese Hospital in São Paulo, Brazil as reported on multiple media outlets.

3

8.      Because APB and Stone breached the oral contract with MCS only two hours before Stone was expected to arrive in Ecuador, MCS incurred consequential damages as a direct and proximate result of APB's and Stone's breach in the amount of at least $77,420.09 for travel expenses, including airfare, car rentals and hotel reservations ($23,250.03), media production ($33,316.53) and logistical services ($20,853.53).   Moreover, MCS' reputation with the ROE was severely damaged and affected given that Stone was supposed to meet high-level government officials including the President who had changed his international travel agenda to personally greet Stone in Quito on April 7, 2014.

9.      As of the date of this affidavit, neither APB nor Stone has refunded MCS for the $275,000.00 speaker fee nor have they reimbursed MCS for the consequential damages incurred by MCS as a direct and proximate cause of APB's and Stone's breach.

_____
MARIA GARAY


Subscribed and sworn before me this 23rd day of February, 2015 in Brooklyn, New York.

_____
NOTARY PUBLIC

KILLMARA K DAWSON
Notary Public - State of New York
NO. 01DA6255520
Qualified in Kings County
My Commission Expires 03/06/2016

4

# EXHIBIT B

## Completed Wires

### Completed Wire Detail

| | |
|---|---|
| Source Account | MCSQUARED PR (Checking) |
| Amount | $137,500.00 |
| Beneficiary | American Program Bureau, Inc. |
| Beneficiary Account | 9058 |
| Bank | BANK OF AMERICA, N.A., NY New York, NY |
| Destination ABA | 026009593 |
| Date | 03/07/2014 |
| Reference Number | 20140307B1Q8021C021436 |
| Citibank Reference Number | 0660456647 |
| Set up by | MAria Garay |

< Back

Citibank, N.A. Member FDIC. Terms and conditions of accounts, products and services are subject to change.

citi

Citi.com



Terms, conditions, caveats and small print

Copyright © 2014 Citigroup Inc.

<u>Main Menu</u> > <u>Transfers and Payments</u> >

<u>Help</u>

## Completed Wires

| Completed Wire Detail | |
|---|---|
| Source Account | MCSQUARED PR (Checking) |
| Amount | $137,500.00 |
| Beneficiary | American Program Bureau, Inc |
| Beneficiary Account | 9058 |
| Bank | BANK OF AMERICA, N.A., NY New York, NY |
| Destination ABA | 026009593 |
| Date | 03/25/2014 |
| Reference Number | 20140325B1Q8021C027387 |
| Citibank Reference Number | 0840649357 |
| Set up by | Veronica Quito |

< Back

Citibank, N.A. Member FDIC. Terms and conditions of accounts, products and services are subject to change.

**citi**

Citi.com



Terms, conditions, caveats and small print

Copyright © 2014 Citigroup Inc.