

March 19, 2015

**VIA ECF**

Honorable Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    ***MCSquared PR, Inc. v. Sharon Stone, et. al.***
                Case No. 15-CV-00961-RRM-CLP

Dear Judge Mauskopf:

      We write as counsel for Plaintiff MCSquared PR, Inc. ("MCS") in the above-referenced action. We are hereby submitting MCS' Reply in Support of the Request for Certificate of Default [ECF No. 13] as to Defendant Sharon Stone ("Stone") filed by MCS earlier today. While it is true that Stone requested an extension of her time to answer, the Court **did not** grant such request and there is nothing in the local rules providing that a request for extension of time is granted by default by the mere filing of a request. In addition, Stone did not request MCS' for an extension of time to file her answer the complaint.

      Further, the cases cited by Stone are inapposite to the facts of this matter. In *Diallo v. City of New York*, 1996 WL 288249 (S.D.N.Y. May 31, 1996), the Court had **granted** an extension of time to the defendant **before** the filing a motion for a pre-motion conference, the Court **scheduled** the pre-motion conference, and counsel for Plaintiff was not diligent by failing to attend the same, and he then requested the entry of a default again a defendant that had been extremely diligent in defending the case. Here, MCS has been extremely diligent in prosecuting this case, by for example filing a response to the pre-motion request on the same date. On the other hand, Stone has not been as diligent as the defendant in *Diallo*, because she failed to get a definitive assurance from this Court that her request for an extension of time to answer the complaint was granted.

      In *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357 (S.D.N.Y. 2006), the Court did not address a request for an entry of default at all in its opinion, but rather the case was all about the timing of a motion to remand a case back to state court after it was removed to federal court.

1001 BRICKELL BAY DRIVE, 9TH FLOOR
MIAMI, FLORIDA 33131

**TEL:** (305) 615 1434 **FAX:** (305) 615 1435 **CELL:** (917) 613 8799 **WEB:** WWW.RDASILVALAW.COM
**EMAIL:** RODRIGO@RDASILVALAW.COM

Honorable Roslynn R. Mauskopf
March 19, 2015
Page 2 of 2

The court in *Tyco Int'l*, relied on a body of case law holding that the doctrine of equitable tolling is applicable to removal deadlines. Stone failed to cite any authority providing for the application of the doctrine of equitable tolling for missing the applicable deadline to file an answer to the complaint. MCS has also failed to find such authority. On the other hand, the Request for Certificate of Default is based on the application of the clear mandate of Federal Rule of Civil Procedure 55(a) which provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk **must** enter the party's default." *See* Fed. R. Civ. P. 55(a) (emphasis added).

      Furthermore, what it is really outrageous is that Stone in bad faith requested a pre-motion conference based on a purported arbitration agreement that does not exist because MCS **did not** receive a fully executed copy of the written agreement, and as such, no agreement to arbitrate was ever entered into. In fact, the last version of the purported written agreement delivered to MCS, without the signatures of Defendants, **did not** include an arbitration clause at all. *See* **Exhibit A**. Even if Defendants attempt to sign the agreement *ex post facto*, they cannot force MCS now to arbitrate when the agreement was not entered into at the relevant time back in April 2014. Notably, Stone does not dispute the facts that she and her agency received the sum of **$275,000.00** from MCS or that she failed to honor her commitment to make the appearances for which she was paid this very large sum of money.

      For the foregoing reasons, the Court should direct the Clerk of the Court to enter a default against Defendant Sharon Stone.

Respectfully submitted,

/s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva

cc: Counsel of Record (via ECF)

# EXHIBIT A



American Program Bureau, Inc.
313 Washington Street, Suite 225, Newton, MA 02458
Phone: 617.614.1600   Fax: 617.965.6610   apbspeakers.com

Date 03/13/2014      Contract: 60102 - R      Agent: HOUSE

## REVISED CONTRACT

**CLIENT:** MCSquared PR Inc.
**FOR:** Secretariat of Communications of Ecuador
**PRIMARY CONTACT:** Ms. Maria del Carmen Garay
649 Morgan Ave
Brooklyn, NY 1122
**Phone:** 212.602.1730      **Email:** lady.zuniga@mc2pr.com

**SPEAKER:** Sharon Stone
**DATE OF PROGRAM:** 04/06/2014      **TIME:** 09:00 AM
**FEE:** $275,000.00 plus expenses outlined below.
**TRAVEL / EXPENSES:** In addition to fee, Client will be billed for three unrestricted fully-refundable First Class airfare, airport meet and greets and professional ground transportation in Speaker's originating city. Client will arrange and directly pay for airfare associated with the Amazon tour; hotel (one two-bed, two-bath suite and one king room for up to five nights), and exclusive First Class professional ground transportaion 24/7 while in Ecuador. It is be best hotel in Ecuador and it will have free WiFi and room service Ms. Stone and her traveling party will have the entire floor of the hotel. There will be mutual approval over the messaging and content of he materials. 24/7 Security will be provided. Client will also provide a guide for Ms. Stone. All monies, including travel, are due in USD via wire transfer to APB on or before, March 6.

**TOPIC:** The Devastation Big Oil Left Behind in the Ecuadorian Amazon

**SCHEDULE:** Ms. Stone's visit will encompass meet and greets with President Correa (if available), Vice President Glass, Secretary of the Environment, Secretary of Energy as well as others. She will also visit the affected areas of the Amazon and also to protected areas and interact with the affected communities.
April 6: Arrive Quito
April 7: Presidential Changing of the Guard Ceremony and meetings with the President and Vice President and others. Ms. Stone's participation limited to not more than four hours
April 8: Fly to Orellana Province (helicopter or commercial); Visit contaminated areas and meet with representatives of affected communites; Press at the site. Ms Stone's participation limited to not more than eight hours
April 9: Press Conference with the Public Media re: Findings of the Ecuadorian Amazon Tour. Ms. Stone's participation limited to not more than four hours.
April 10: Tour of Ecuador
April 11: Leave Ecuador
Speaker's duties on any full day shall not exceed eight hours and on half days shall not exceed four hours.

**VENUE:** The Presidential Palace and the Rainforest
Quito. Ecuador
**AUDIENCE:** High Level Officials
**SPECIAL REQUIREMENTS:** Speaker requires professional meet and greet at all airports, a 4-star hotel or better, and hair and make-up before all public appearances. Client must also provide security. All marketing, promotional materials, recording and use of the Speaker's image, voice, likeness and photographs, for the Speaker's appearance pursuant to the Schedule on the first page of this Contract, must be pre-approved in writing by the Speaker. Client agrees to execute a separate indemnification agreement per paragraph 14 as Exhibit A attached herein and provide same to Speaker.

**TECHNICAL REQUIREMENTS:**

**PAYMENT:**
$137,500.00 Deposit Invoice due on or before 03/06/2014
$137,500.00 Balance Invoice due on or before 03/16/2014

**INVOICE:** Maria Garay
MCSquared PR Inc.
649 Morgan Ave
Brooklyn, NY 11222

Please make checks payable to American Program Bureau, Inc. (Fed ID #04-2371423)

| | |
|---|---|
| **CLIENT** | **AMERICAN PROGRAM BUREAU, INC.** |
| **AUTHORIZED SIGNATURE:** _[signed]_ | **AUTHORIZED SIGNATURE:** _____ |
| **NAME & TITLE:** CEO | **NAME & TITLE:** Amy L. Stein, Treasurer |

This Agreement is subject to the additional terms and conditions set forth on the following pages.
The individual signing this Agreement warrants that he/she signs as a duly authorized representative of the Client.

Form 201303-06-CD      Page 1 of 5

**Exhibit A**

**Indemnification:**

Client shall defend, indemnify and hold Speaker (and her loan-out corporation) harmless from and against any and all claims, liabilities, causes of action, actions, proceedings, demands, costs, suits, losses, damages, injuries and expenses (including reasonable outside attorney's fees) in connection with or arising from Speaker's services, acts, omissions, statements and commitments hereunder, including, without limitation, if Speaker is injured or suffers any loss or damages (e.g., theft) in any way while in Ecuador or rendering services hereunder; the messaging, content, written and verbal material provided by Client, or its employees or designees to Speaker; and otherwise in connection with the production, promotion, marketing (including without limitation all written materials related thereto), recording, use, distribution, exploitation of Speaker's appearance hereunder or any element thereof in any and all media and by all technologies and processes now known or hereafter devised throughout the universe in perpetuity.  Additionally, in the event that the Speaker has any issues or injuries in Equador, Client covers all medical bills and expenses.

Client Signature

_____